UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

|                                                                                          |   |                                                                     |
|------------------------------------------------------------------------------------------|---|---------------------------------------------------------------------|
| UNITED STATES *ex rel.*,                                                                  | \| | **UNDER SEAL**                                                       |
| ANDREW HALLDORSON                                                                         | \| | **FILE UNDER ▮▮▮▮▮▮▮A**                                              |
|   4303 Tent House Court                                                         | \| | ▮▮▮▮▮▮▮▮ SEAL                                                        |
|   West River, Maryland 20778,                                                   | \| |                                                                     |
|                                                                                          | \| |                                                                     |
|       Plaintiff/Relator,                                    | \| | Case: 1:17–cv–00052     **JURY DEMAND**                              |
|                                                                                          | \| | Assigned To : Walton, Reggie B.                                      |
|      v.                                                          | \| | Assign. Date : 1/11/2017                                             |
|                                                                                          | \| | Description: Gen. Civil     **(E-DECK)**                             |
| 22nd CENTURY TECHNOLOGIES,                                                           | \| |                                                                     |
| INC.                                                                                      | \| |                                                                     |
|   1 Executive Drive, Suite 285                                                  | \| |                                                                     |
|   Somerset, New Jersey 08873-4024,                                              | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| 22nd CENTURY STAFFING, INC.                                                          | \| |                                                                     |
|   4701 Cox Road, Suite 301                                                      | \| |                                                                     |
|   Glen Allen Virginia 23060,                                                    | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| MISSION SERVICES, INC.                                                                    | \| |                                                                     |
|   2011 Crystal Drive, Suite 400                                                 | \| |                                                                     |
|   Arlington, Virginia 22202,                                                    | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| EXCELLUS SOLUTIONS, LLC                                                                   | \| |                                                                     |
|   8251 Greensboro Drive, Suite 250                                              | \| |                                                                     |
|   McLean, Virginia 22102,                                                       | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| OST INC.                                                                                  | \| |                                                                     |
|   2001 M Street, N.W., Suite 3000                                               | \| |                                                                     |
|   Washington, D.C. 20036,                                                       | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| OUTLINE SYSTEMS, INC.                                                                     | \| |                                                                     |
|   1 Executive Drive, Suite 280                                                  | \| |                                                                     |
|   Somerset, New Jersey 08873-4024,                                              | \| |                                                                     |
|                                                                                          | \| |                                                                     |
| FREEALLIANCE.COM, LLC                                                                     | \| |                                                                     |
|   113 EAST Market Street, Suite 120,                                            | \| |                                                                     |
|   Leesburg, Virginia, 20176,                                                    | \| |                                                                     |

SATVINDER SINGH
  11 Rock Ledge Court
  Belle Mead, New Jersey 08502,

ANIL SHARMA
  Serve at:
  8251 Greensboro Drive
  Suite 250, McLean, Virginia 22102,

RAMANJIT SINGH
  Serve at:
  8251 Greensboro Drive, Suite 250
  McLean, Virginia 22102,

MONA SINGH
  Serve at:
  113 East Market Street, Suite 120
  Leesburg, Virginia, 20176,

VENKATESH K. JOSHI
  20281 Beechwood Terrace, No. 103
  Ashburn, VA 20147,

  and

RAVI C. NARAYAN
  1961 Horse Shoe Drive
  Vienna, Virginia  22182,

      Defendants.

## COMPLAINT

1.      This is an action under the Civil False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, regarding the Defendants' knowingly false representations of small business status in order to gain access to small and disadvantaged business set-aside contract and subcontract awards.  As discussed below, the Defendants' representations were false,

2

because they are affiliated within the meaning of 13 C.F.R. § 121.103 and other applicable statutes and regulations.   The Defendants also exploited their undisclosed affiliations to engage in market allocation and bid and price collusion in their preparation and submission of proposals for Federal contracts.

## JURSDICTION AND VENUE

2.     This action arises under 31 U.S.C. § 3729, *et seq*.  Therefore, this is a case or controversy arising under the laws of the United States.  Hence this Court has subject matter jurisdiction under 28 U.S.C. § 1331.

3.     This action may be brought in this judicial district under 31 U.S.C. § 3732(a), because, *inter alia*, one or more Defendants transacts business in this judicial district under numerous Federal contracts with Federal agencies located in this judicial district; and at least one Defendant can be found or resides in this judicial district.

## PARTIES

4.     Relator Andrew Halldorson ("Halldorson") resides at 4303 Tent House Court, West River, Maryland 20778.  He worked as a Vice President of Defendant 22nd Century Technologies, Inc. starting in September of 2015.  He worked at Defendant Mission Services, Inc. starting in April of 2016.  For the reasons set forth herein, Halldorson resigned from 22nd Century Technologies, Inc. and Mission Services, Inc. on or about July 15, 2016.

5.     Defendant 22nd Century Technologies, Inc. ("22nd Century") was formed in 1997 under the laws of the State of New Jersey.  22nd Century has a principle office at 1

Executive Drive, Suite 285, Somerset, New Jersey 08873-4024. It also has offices in at least 13 states, including at 8251 Greensboro Drive, Suite 250, McLean, Virginia 22102.

6.     Defendant 22nd Century Staffing, Inc. ("22nd Century Staffing") was formed in 2013 under the laws of the state of Virginia. 22nd Century Staffing has published office addresses at 4701 Cox Road, Suite 301, Glen Allen Virginia 23060, and at 22493 Terra Rosa Place, Ashburn, Virginia 20148.

7.     Defendant Mission Services, Inc. ("MSI") MSI was formed under the laws of the state of Virginia. MSI has an office at 2011 Crystal Drive, Suite 400, Arlington, Virginia 22202.

8.     Defendant Excellus Solutions, LLC ("Excellus") was formed in 2010 under the law of the state of Virginia. The Excellus address listed with the Virginia Secretary of State's office is 8251 Greensboro Drive, Suite 250, McLean, Virginia 22102. The Excellus website shows an address at 7926 Jones Branch, Suite 505, McLean, VA 22102, *i.e.*, the same address as Defendant 22nd Century.

9.     Defendant OST, Inc. ("OST") was formed under the laws of District of Columbia. OST's address as listed with the Virginia Secretary of State's office is 2001 M Street, N.W., Suite 3000, Washington, D.C. 20036. The OST website lists an address at 2101 L Street, N.W., Suite 800, Washington, D.C. 20037. OST's listed registered agent is Ajay Madan, 1676 International Drive, Suite 1100, McLean, Virginia, which address also is shown as OST's "mailing" address on the OST website.

10.     Defendant Outline Systems, Inc. ("Outline") shares a street address with Defendant 22nd Century at 1 Executive Drive, Suite 280, Somerset, New Jersey 08873.

11.     Defendant Freealliance.com, LLC ("Freealliance") has an office at 113 East Market Street, Suite 120, Leesburg, Virginia, 20176.

12.     Defendant Satvinder Singh is an individual who is believed to reside at 11 Rock Ledge Court, Belle Mead, New Jersey 08502.

13.     Defendant Anil Sharma is an individual who may be served at 8251 Greensboro Drive, Suite 250, McLean, Virginia 22102.

14.     Defendant Ramanjit Singh is an individual who may be served at 8251 Greensboro Drive, Suite 250, McLean, Virginia 22102.

15.     Defendant Mona Singh is an individual who may be served at 113 East Market Street, Suite 120, Leesburg, Virginia, 20176.

16.     Defendant Venkatesh K. Joshi ("Joshi") is in individual believed to reside at 20281 Beechwood Terrace, No. 103, Ashburn, Virginia 20147.

17.     Defendant Ravi C. Narayan ("Narayan") is an individual who is believed to reside at 1961 Horse Shoe Drive, Vienna, Virginia 22182.

## BACKGROUND AND FACTS

18.     "SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for 'small business' concerns. Size standards have been established for types of economic activity, or industry, generally under the North American Industry Classification System (NAICS)." 13 C.F.R. 121.101(a).

19.     A "small business" may be eligible for Government programs and preferences such as the Small Business Set Aside program; the Women-Owned Small

Business and Economically Disadvantaged Women-Owned Small Business program; small business subcontracting; and the 8(a) Business Development program.

20.    As noted above, whether a business is small and therefore eligible for such Government programs and preferences is determined using North American Industry Industrial Classification System ("NAICS") codes.  "NAICS is described in the North American Industry Classification Manual-United States, which is available from the National Technical Information Service, 5285 Port Royal Road, Springfield, VA 22161; by calling 1(800) 553-6847 or 1(703) 605-6000; or via the Internet at *http://www.ntis.gov/products/naics.aspx*.  The manual includes definitions for each industry, tables showing relationships between 1997 NAICS and 1987 SICs, and a comprehensive index. NAICS assigns codes to all economic activity within twenty broad sectors. Section 121.201 provides a full table of small business size standards matched to the U.S. NAICS industry codes." 13 C.F.R. 121.101(b).

21.    In order to qualify as a small business, the business must include its affiliates in assessing its size status.  As the SBA states, "[a]ffiliation is determined by the ability to control.  When the ability to control exists, even if it is not exercised, affiliation exists. The SBA determines affiliation in accordance with 13 CFR 121.103," entitled "How Does SBA Determine Affiliation?"

22.    Section 121.103 of Title 13, Code of Federal Regulations, states as follows:

(a) *General Principles of Affiliation.*

(1) Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has

6

the power to control both. It does not matter whether control is exercised, so long as the power to control exists.

(2) SBA considers factors such as ownership, management, previous relationships with or ties to another concern, and contractual relationships, in determining whether affiliation exists.

(3) Control may be affirmative or negative. Negative control includes, but is not limited to, instances where a minority shareholder has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders.

(4) Affiliation may be found where an individual, concern, or entity exercises control indirectly through a third party.

(5) In determining whether affiliation exists, SBA will consider the totality of the circumstances, and may find affiliation even though no single factor is sufficient to constitute affiliation.

(6) In determining the concern's size, SBA counts the receipts, employees, or other measure of size of the concern whose size is at issue and all of its domestic and foreign affiliates, regardless of whether the affiliates are organized for profit.
. . . .

(b) *Exceptions to affiliation coverage.*

(1) Business concerns owned in whole or substantial part by investment companies licensed, or development companies qualifying, under the Small Business Investment Act of 1958, as amended, are not considered affiliates of such investment companies or development companies.
. . . .[1]

(3) Business concerns which are part of an SBA approved pool of concerns for a joint program of research and development or for defense production as authorized by the Small Business Act are not affiliates of one another because of the pool.

---

[1] The full text of Section 121.103 can be reviewed on the SBA's website and elsewhere. In the interest of brevity, the above recitation of Section 121.103 omits certain of the subsections believed to be irrelevant under the facts of this case.

(4) Business concerns which lease employees from concerns primarily engaged in leasing employees to other businesses or which enter into a co-employer arrangement with a Professional Employer Organization (PEO) are not affiliated with the leasing company or PEO solely on the basis of a leasing agreement.

(5) For financial, management or technical assistance under the Small Business Investment Act of 1958, as amended, an applicant is not affiliated with the investors listed in paragraphs (b)(5) (i) through (vi) of this section.

(i) Venture capital operating companies, as defined in the U.S. Department of Labor regulations found at 29 CFR 2510.3-101(d);

(ii) Employee benefit or pension plans established and maintained by the Federal government or any state, or their political subdivisions, or any agency or instrumentality thereof, for the benefit of employees;

(iii) Employee benefit or pension plans within the meaning of the Employee Retirement Income Security Act of 1974, as amended (29 U.S.C. 1001, *et seq.*);

(iv) Charitable trusts, foundations, endowments, or similar organizations exempt from Federal income taxation under section 501(c) of the Internal Revenue Code of 1986, as amended (26 U.S.C. 501(c));

(v) Investment companies registered under the Investment Company Act of 1940, as amended (1940 Act) (15 U.S.C. 80a-1, *et seq.*); and

(vi) Investment companies, as defined under the 1940 Act, which are not registered under the 1940 Act because they are beneficially owned by less than 100 persons, if the company's sales literature or organizational documents indicate that its principal purpose is investment in securities rather than the operation of commercial enterprises.

(6) A firm that has an SBA-approved mentor-protégé agreement authorized under §124.520 or §125.9 of this chapter is not affiliated with its mentor firm solely because the protégé firm receives assistance from the mentor under the agreement. Similarly, a protégé firm is not affiliated with its mentor solely because the protégé firm receives assistance from the mentor under a federal mentor-protégé program where an exception to affiliation is specifically authorized by statute or by SBA under the procedures set forth in §121.903. Affiliation may be found in either case for other reasons as set forth in this section.

. . . .

(8) These exceptions to affiliation and any others set forth in §121.702 apply for purposes of SBA's SBIR and STTR programs.

(9) In the case of a solicitation for a bundled contract, a small business contractor may enter into a Small Business Teaming Arrangement with one or more small business subcontractors and submit an offer as a small business without regard to affiliation, so long as each team member is small for the size standard assigned to the contract or subcontract. The agency shall evaluate the offer in the same manner as other offers with due consideration of the capabilities of the subcontractors.

(c) *Affiliation based on stock ownership.*
(1) A person (including any individual, concern or other entity) that owns, or has the power to control, 50 percent or more of a concern's voting stock, or a block of voting stock which is large compared to other outstanding blocks of voting stock, controls or has the power to control the concern.

(2) If two or more persons (including any individual, concern or other entity) each owns, controls, or has the power to control less than 50 percent of a concern's voting stock, and such minority holdings are equal or approximately equal in size, and the aggregate of these minority holdings is large as compared with any other stock holding, SBA presumes that each such person controls or has the power to control the concern whose size is at issue. This presumption may be rebutted by a showing that such control or power to control does not in fact exist.

(3) If a concern's voting stock is widely held and no single block of stock is large as compared with all other stock holdings, the concern's Board of Directors and CEO or President will be deemed to have the power to control the concern in the absence of evidence to the contrary.

(d) *Affiliation arising under stock options, convertible securities, and agreements to merge.*
(1) In determining size, SBA considers stock options, convertible securities, and agreements to merge (including agreements in principle) to have a present effect on the power to control a concern. SBA treats such options, convertible securities, and agreements as though the rights granted have been exercised.

(2) Agreements to open or continue negotiations towards the possibility of a merger or a sale of stock at some later date are not considered "agreements in principle" and are thus not given present effect.

(3) Options, convertible securities, and agreements that are subject to conditions precedent which are incapable of fulfillment, speculative, conjectural, or unenforceable under state or Federal law, or where the

probability of the transaction (or exercise of the rights) occurring is shown to be extremely remote, are not given present effect.

(4) An individual, concern or other entity that controls one or more other concerns cannot use options, convertible securities, or agreements to appear to terminate such control before actually doing so. SBA will not give present effect to individuals', concerns' or other entities' ability to divest all or part of their ownership interest in order to avoid a finding of affiliation.

(e) *Affiliation based on common management.* Affiliation arises where one or more officers, directors, managing members, or partners who control the board of directors and/or management of one concern also control the board of directors or management of one or more other concerns.

(f) *Affiliation based on identity of interest.* Affiliation may arise among two or more persons with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as family members, individuals or firms with common investments, or firms that are economically dependent through contractual or other relationships) may be treated as one party with such interests aggregated. Where SBA determines that such interests should be aggregated, an individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate.

(1) Firms owned or controlled by married couples, parties to a civil union, parents, children, and siblings are presumed to be affiliated with each other if they conduct business with each other, such as subcontracts or joint ventures or share or provide loans, resources, equipment, locations or employees with one another. This presumption may be overcome by showing a clear line of fracture between the concerns. Other types of familial relationships are not grounds for affiliation on family relationships.

(2) SBA may presume an identity of interest based upon economic dependence if the concern in question derived 70% or more of its receipts from another concern over the previous three fiscal years.

(i) This presumption may be rebutted by a showing that despite the contractual relations with another concern, the concern at issue is not solely dependent on that other concern, such as where the concern has been in business for a short amount of time and has only been able to secure a limited number of contracts.

(ii) A business concern owned and controlled by an Indian Tribe, ANC, NHO, CDC, or by a wholly-owned entity of an Indian Tribe, ANC, NHO, or CDC, is not considered to be affiliated with another concern owned by

that entity based solely on the contractual relations between the two concerns.

. . . .

(g) *Affiliation based on the newly organized concern rule.* Affiliation may arise where former officers, directors, principal stockholders, managing members, or key employees of one concern organize a new concern in the same or related industry or field of operation, and serve as the new concern's officers, directors, principal stockholders, managing members, or key employees, and the one concern is furnishing or will furnish the new concern with contracts, financial or technical assistance, indemnification on bid or performance bonds, and/or other facilities, whether for a fee or otherwise. A concern may rebut such an affiliation determination by demonstrating a clear line of fracture between the two concerns. A "key employee" is an employee who, because of his/her position in the concern, has a critical influence in or substantive control over the operations or management of the concern.

(h) *Affiliation based on joint ventures.* A joint venture is an association of individuals and/or concerns with interests in any degree or proportion consorting to engage in and carry out no more than three specific or limited-purpose business ventures for joint profit over a two year period, for which purpose they combine their efforts, property, money, skill, or knowledge, but not on a continuing or permanent basis for conducting business generally. This means that a specific joint venture entity generally may not be awarded more than three contracts over a two year period, starting from the date of the award of the first contract, without the partners to the joint venture being deemed affiliated for all purposes. Once a joint venture receives one contract, SBA will determine compliance with the three awards in two years rule for future awards as of the date of initial offer including price. As such, an individual joint venture may be awarded more than three contracts without SBA finding general affiliation between the joint venture partners where the joint venture had received two or fewer contracts as of the date it submitted one or more additional offers which thereafter result in one or more additional contract awards. The same two (or more) entities may create additional joint ventures, and each new joint venture entity may be awarded up to three contracts in accordance with this section. At some point, however, such a longstanding inter-relationship or contractual dependence between the same joint venture partners will lead to a finding of general affiliation between and among them. For purposes of this provision and in order to facilitate tracking of the number of contract awards made to a joint venture, a joint venture: Must be in writing and must do business under its own name; must be identified as a joint venture in the

11

System for Award Management (SAM); may be in the form of a formal or informal partnership or exist as a separate limited liability company or other separate legal entity; and, if it exists as a formal separate legal entity, may not be populated with individuals intended to perform contracts awarded to the joint venture (*i.e.,*the joint venture may have its own separate employees to perform administrative functions, but may not have its own separate employees to perform contracts awarded to the joint venture). SBA may also determine that the relationship between a prime contractor and its subcontractor is a joint venture, and that affiliation between the two exists, pursuant to paragraph (h)(5) of this section. For purposes of this paragraph (h), contract refers to prime contracts, and any subcontract in which the joint venture is treated as a similarly situated entity as the term is defined in part 125 of this chapter.

(1) Parties to a joint venture are affiliates if any one of them seeks SBA financial assistance for use in connection with the joint venture.

(2) Except as provided in paragraph (h)(3) of this section, concerns submitting offers on a particular procurement or property sale as joint venturers are affiliated with each other with regard to the performance of that contract.

(3) *Exception to affiliation for certain joint ventures.*
   (i) A joint venture of two or more business concerns may submit an offer as a small business for a Federal procurement, subcontract or sale so long as each concern is small under the size standard corresponding to the NAICS code assigned to the contract.
   (ii) Two firms approved by SBA to be a mentor and protégé under §125.9 of this chapter may joint venture as a small business for any Federal government prime contract or subcontract, provided the protégé qualifies as small for the size standard corresponding to the NAICS code assigned to the procurement, and the joint venture meets the requirements of §125.18(b)(2) and (3), §126.616(c) and (d), or §127.506(c) and (d) of this chapter, as appropriate.
   (iii) Two firms approved by SBA to be a mentor and protégé under §124.520 of these regulations may joint venture as a small business for any Federal government prime contract or subcontract, provided the protégé qualifies as small for the size standard corresponding to the NAICS code assigned to the procurement and, for purposes of 8(a) sole source requirements, has not reached the dollar limit set forth in §124.519 of these regulations. If the procurement is to be awarded through the 8(a) BD program, SBA must approve the joint venture pursuant to §124.513. If the procurement is to be awarded other than through the 8(a) BD program

(*e.g.,* small business set aside, HUBZone set aside), SBA need not approve the joint venture prior to award, but if the size status of the joint venture is protested, the provisions of §§124.513(c) and (d) will apply. This means that the joint venture must meet the requirements of §§124.513(c) and (d) in order to receive the exception to affiliation authorized by this paragraph. In either case, after contract performance is complete, the 8(a) partner to the joint venture must submit a report to its servicing SBA district office explaining how the applicable performance of work requirements were met for the contract.

(4) A contractor and its ostensible subcontractor are treated as joint venturers, and therefore affiliates, for size determination purposes. An ostensible subcontractor is a subcontractor that is not a similarly situated entity, as that term is defined in §125.1 of this chapter, and performs primary and vital requirements of a contract, or of an order, or is a subcontractor upon which the prime contractor is unusually reliant. All aspects of the relationship between the prime and subcontractor are considered, including, but not limited to, the terms of the proposal (such as contract management, technical responsibilities, and the percentage of subcontracted work), agreements between the prime and subcontractor (such as bonding assistance or the teaming agreement), and whether the subcontractor is the incumbent contractor and is ineligible to submit a proposal because it exceeds the applicable size standard for that solicitation.

(5) For size purposes, a concern must include in its receipts its proportionate share of joint venture receipts, and in its total number of employees its proportionate share of joint venture employees.
. . . .

23.     The pertinent size standards for the business Defendants in this case are based on annual receipts.  The SBA's rules for calculation of receipts for purposes of assessing affiliation are set forth in 13 C.F.R. 121.104, "How does SBA calculate annual receipts?"[2]  Section 121.104 states:

(a) *Receipts* means all revenue in whatever form received or accrued from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by

---

[2]  The other measure of size, inapplicable in this case, is number of employees. The rules for determining the number of employees are set forth at 13 C.F.R. 121.106.

returns and allowances. Generally, receipts are considered "total income" (or in the case of a sole proprietorship "gross income") plus "cost of goods sold" as these terms are defined and reported on Internal Revenue Service (IRS) tax return forms (such as Form 1120 for corporations; Form 1120S and Schedule K for S corporations; Form 1120, Form 1065 or Form 1040 for LLCs; Form 1065 and Schedule K for partnerships; Form 1040, Schedule F for farms; Form 1040, Schedule C for other sole proprietorships). Receipts do not include net capital gains or losses; taxes collected for and remitted to a taxing authority if included in gross or total income, such as sales or other taxes collected from customers and excluding taxes levied on the concern or its employees; proceeds from transactions between a concern and its domestic or foreign affiliates; and amounts collected for another by a travel agent, real estate agent, advertising agent, conference management service provider, freight forwarder or customs broker. For size determination purposes, the only exclusions from receipts are those specifically provided for in this paragraph. All other items, such as subcontractor costs, reimbursements for purchases a contractor makes at a customer's request, investment income, and employee-based costs such as payroll taxes, may not be excluded from receipts.

(1) The Federal income tax return and any amendments filed with the IRS on or before the date of self-certification must be used to determine the size status of a concern. SBA will not use tax returns or amendments filed with the IRS after the initiation of a size determination.

(2) When a concern has not filed a Federal income tax return with the IRS for a fiscal year which must be included in the period of measurement, SBA will calculate the concern's annual receipts for that year using any other available information, such as the concern's regular books of account, audited financial statements, or information contained in an affidavit by a person with personal knowledge of the facts.

(b) *Completed fiscal year* means a taxable year including any short year. "Taxable year" and "short year" have the meanings attributed to them by the IRS.

(c) *Period of measurement.* (1) Annual receipts of a concern that has been in business for three or more completed fiscal years means the total receipts of the concern over its most recently completed three fiscal years divided by three.

14

(2) Annual receipts of a concern which has been in business for less than three complete fiscal years means the total receipts for the period the concern has been in business divided by the number of weeks in business, multiplied by 52.

(3) Where a concern has been in business three or more complete fiscal years but has a short year as one of the years within its period of measurement, annual receipts means the total receipts for the short year and the two full fiscal years divided by the total number of weeks in the short year and the two full fiscal years, multiplied by 52.

(d) *Annual receipts of affiliates.* (1) The average annual receipts size of a business concern with affiliates is calculated by adding the average annual receipts of the business concern with the average annual receipts of each affiliate.

(2) If a concern has acquired an affiliate or been acquired as an affiliate during the applicable period of measurement or before the date on which it self-certified as small, the annual receipts used in determining size status includes the receipts of the acquired or acquiring concern. Furthermore, this aggregation applies for the entire period of measurement, not just the period after the affiliation arose.

(3) If the business concern or an affiliate has been in business for a period of less than three years, the receipts for the fiscal year with less than a 12 month period are annualized in accordance with paragraph (c)(2) of this section. Receipts are determined for the concern and its affiliates in accordance with paragraph (c) of this section even though this may result in using a different period of measurement to calculate an affiliate's annual receipts.

(4) The annual receipts of a former affiliate are not included if affiliation ceased before the date used for determining size. This exclusion of annual receipts of a former affiliate applies during the entire period of measurement, rather than only for the period after which affiliation ceased.

(e) Unless otherwise defined in this section, all terms shall have the meaning attributed to them by the IRS.

[61 FR 3286, Jan. 31, 1996, as amended at 65 FR 48604, Aug. 9, 2000; 69 FR 29203, May 21, 2004; 81 FR 34258, May 31, 2016]

15

24.    Certain damages, "deemed certifications" and civil penalties applicable to any small business that misrepresents its size status for purposes of Government programs and preferences are set forth at 13 C.F.R. 121.108:

(a) *Presumption of Loss Based on the Total Amount Expended.* In every contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant which is set aside, reserved, or otherwise classified as intended for award to small business concerns, there shall be a presumption of loss to the United States based on the total amount expended on the contract, subcontract, cooperative agreement, cooperative research and development agreement, or grant whenever it is established that a business concern other than a small business concern willfully sought and received the award by misrepresentation.

(b) *Deemed Certifications.* The following actions shall be deemed affirmative, willful and intentional certifications of small business size and status:

(1) Submission of a bid, proposal, application or offer for a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement reserved, set aside, or otherwise classified as intended for award to small business concerns.

(2) Submission of a bid, proposal, application or offer for a Federal grant, contract, subcontract, cooperative agreement or cooperative research and development agreement which in any way encourages a Federal agency to classify the bid or proposal, if awarded, as an award to a small business concern.

(3) Registration on any Federal electronic database for the purpose of being considered for award of a Federal grant, contract, subcontract, cooperative agreement, or cooperative research and development agreement, as a small business concern.

(c) *Signature Requirement.* Each offer, proposal, bid, or application for a Federal contract, subcontract, or grant shall contain a certification concerning the small business size and status of a business concern seeking the Federal contract, subcontract or grant. An authorized official must sign the certification on the same page containing the size status claimed by the concern.

(d) *Limitation of Liability.* Paragraphs (a) through (c) of this section may be determined not to apply in the case of unintentional errors, technical malfunctions, and other similar situations that demonstrate that a misrepresentation of size was not affirmative, intentional, willful or actionable under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.* A prime contractor acting in good faith should not be held liable for misrepresentations made by its subcontractors regarding the subcontractors' size. Relevant factors to consider in making this determination may include the firm's internal management procedures governing size representation or certification, the clarity or ambiguity of the representation or certification requirement, and the efforts made to correct an incorrect or invalid representation or certification in a timely manner. An individual or firm may not be held liable where government personnel have erroneously identified a concern as small without any representation or certification having been made by the concern and where such identification is made without the knowledge of the individual or firm.

(e) *Penalties for Misrepresentation.*
(1) *Suspension or debarment.* The SBA suspension and debarment official or the agency suspension and debarment official may suspend or debar a person or concern for misrepresenting a firm's size status pursuant to the procedures set forth in 48 CFR subpart 9.4.

(2) *Civil Penalties.* Persons or concerns are subject to severe penalties under the False Claims Act, 31 U.S.C. 3729-3733, the Program Fraud Civil Remedies Act, 31 U.S.C. 3801-3812 and any other applicable laws or regulations, including 13 CFR part 142.

25.     Federal regulations and Federal prime contractors also award (and withhold

award of) Federal subcontracts based on potential subcontractor representations as to

their small, small and disadvantaged (8(a)) and small and woman-owned status. Under

Federal Acquisition Regulation ("FAR") 19.702, "[a]ny contractor receiving a contract

with a value greater than the simplified acquisition threshold must agree in the contract

that small business, veteran-owned small business, service-disabled veteran-owned small

business, HUBZone small business, small disadvantaged business, and women-owned

small business concerns will have the maximum practicable opportunity to participate in

contract performance consistent with its efficient performance." For example, "[i]n negotiated acquisitions, each solicitation of offers to perform a contract that is expected to exceed $700,000 ($1.5 million for construction) and that has subcontracting possibilities, shall require the apparently successful offeror to submit an acceptable subcontracting plan. If the apparently successful offeror fails to negotiate a subcontracting plan acceptable to the contracting officer within the time limit prescribed by the contracting officer, the offeror will be ineligible for award." FAR 19.702(a)(1).

26.     22nd Century.      Defendant 22nd Century's website states that "22nd Century Technologies, Inc. is a SBA certified 8(a) Small Disadvantage Business with over 18 years of experience providing IT services and solutions to Federal, State & Local government agencies." 22nd Century has or has had federal small business and minority small business set aside contracts with many agencies, including the U.S. National Institutes of Health, U.S. Departments of the Air Force, Navy and Army, U.S. Federal Aviation Administration, U.S. Defense Logistics Agency, U.S. Internal Revenue Service, U.S. Department of Justice, U.S. Department of the Interior, U.S. Department of Transportation, and the U.S. Federal Maritime Commission, and with many prime contractors.

27.     Defendant Satvinder Singh is an owner and is the President of 22nd Century. Defendant Anil Sharma is Chief Operating Officer of 22nd Century. He works as a consultant for 22nd Century.

28.     Defendant 22nd Century's website states that 22nd Century is subject to the following NAICS codes:  541511, 541512, 541513, 541519, and 518210.  The SBA's size standard and description for each of these codes is as follows:

| 541511 | Custom Computer Programming Services | $27.5 million |
|--------|--------------------------------------|---------------|
| 541512 | Computer Systems Design Services | $27.5 million |
| 541513 | Computer Facilities Management Services | $27.5 million |
| 541519 | Other Computer Related Services | $27.5 million |
| 518210 | Data Processing, Hosting and Related Services | $32.5 million |

13 C.F.R. 121.201.

29.     On or about September 30, 2016, 22nd Century's revenue (excluding any of its alleged affiliates' revenues) exceeded the dollar limit for some if not all of its above NAICS codes.

30.     <u>22nd Century Staffing</u>.     Defendant  22nd  Century  Staffing's  website states that it is "the fastest growing staffing company in North America and the only firm of its kind specialized in all type of staffing services.  TSCSI with its Headquarters in Ashburn, VA with presence in 30+ states of the Nation.  TSCSI has over 50+ Information Technology & General Staffing Services contracts in place with numerous United States Government and Private sector Agencies."

31.     Defendant 22nd Century paid the incorporation fee to incorporate 22nd Century Staffing.

19

32.  22nd Century Staffing was incorporated by the wife of Defendant Anil Sharma, Anupama Sharma.  Anupama Sharma also is listed as i22nd Century Staffing's Director and President.

33.  Defendant 22nd Century Staffing represents that it is a woman-owned small business.

34.  Defendant 22nd Century owner and President, Defendant Satvinder Singh, has worked as 22nd Century Staffing's President.  Satvinder Singh's wife owns 22nd Century Staffing but does not work at 22nd Century Staffing.

35.  As alleged above, Defendant 22nd Century shares (or has shared) an office with co-Defendant 22nd Century Staffing at 1 Executive Drive, Suite 285, Somerset, New Jersey 08873-4024.  22nd Century Staffing also has published office addresses at 4701 Cox Road, Suite 301, Glen Allen Virginia 23060, and 22493 Terra Rosa Place, Ashburn, Virginia 20148.

36.  22nd Century Staffing's website states that 22nd Century Staffing is subject to the following NAICS codes:  541611, 541612, 541613, 541618, 541690, 541990, 561110, 561320, and 561990.  The SBA's size standard and description for this code are as follows:

| 541611 | Administrative Management and General Management Consulting Services | $15 million |
|--------|---------------------------------------------------------------------|-------------|
| 541612 | Human Resources Consulting Services | $15 million |
| 541613 | Marketing Consulting Services | $15 million |
| 541618 | Other Management Consulting Services | $15 million |

| 541690 | | |
|--------|--------------------------------------------------|----------------|
| 541990 | All Other Professional, Scientific and Technical Services | $15 million |
| 561110 | Office Administrative Services | $7.5 million |
| 561320 | Temporary Help Services | $27.5 million |
| 561990 | All Other Support Services | $11 million |

13 C.F.R. 121.201.

37.    MSI.  As stated above, Defendant MSI has an office at 2011 Crystal Drive, Suite 400, Arlington, Virginia 22202.  MSI also operates from the offices of Defendant Excellus on Jones Branch Road.  MSI represents that it is a small business with federal small business set-aside contracts.

38.    Defendant MSI was formed after Defendant 22nd Century, indirectly through its owner Defendant Satvinder Singh, purchased Bizzell Corp. and changed Bizzell Corp.'s name to MSI.  At the time, Bizzell Corp.'s work included many Federal subcontracts.  In January of 2016, 22nd Century executed a letter of intent to purchase Bizzell Corp.  The letter of intent was signed by Defendant Anil Sharma.  Defendant Satvinder Singh gave Defendant Venkatesh Yoshi money to purchase Bizzell Corp.  In or about March of 2016, Defendant Yoshi in his individual capacity then purchased Bizzell Corp. via a stock purchase agreement.  Venkatesh Joshi became the owner and president of MSI, and the registered agent for MSI.

39.    When Halldorson left MSI, MSI was in the process of acquiring an 8(a) company named MSI Universal, Inc. (Gaithersburg, Maryland).  Defendant Satvinder Singh was also funding, or planning to fund, this secondary purchase.  MSI's intention was to transfer some of MSI Universal's contracts to yet another 8(a) company, this one

21

owned by Venkatesh Yoshi's wife, Pritti Yoshi.  Pritti Yoshi works several hours a day for MSI but gets paid a full time salary of $50,000.

40.   On its website under "Contracts," MSI's website describes U.S. Air Force Indefinite Delivery Indefinite Quantify ("IDIQ") small business set aside contract no. FA8771-12-D-1006, Network-Centric Solutions-2 ("NETCENTS-2").   "The NETCENTS-2 contract "provide[s] the Air Force with a primary source of netcentric and IT products, services, and solutions. NETCENTS-2 Application Services is a multiple award indefinite delivery, indefinite quantity (ID/IQ) contract with the US Air Force to provide Information Technology Services with ceiling value of $960 million."  Under a sub-link in the "Contracts" page of its website entitled "Our NETCENTS-2 past performances" [sic], MSI describes at length Defendant Excellus's purported work under the NETCENTS-2 contract. See http://missions2i.com/pastPerformance.html.

41.   MSI reportedly is subject primarily to the following NAICS code 541990. The SBA's size standard and description for this NAICS code is as follows:

| 541990 | All Other Professional, Scientific and Technical Services | $15 million |
|---|---|---|

13 C.F.R. 121.201.

42.   <u>Excellus</u>.   Defendant Excellus is a joint venture formed by Defendant 22nd Century and Defendant OST under the law of the state of Virginia.  In September of 2013, Defendant Satvinder Singh was listed as a Member of Excellus with "the right and power to manage the business and affairs" of Excellus.  Excellus's registered agent is shown as Defendant Radiant Solutions, Inc.

43.    On its website, Defendant Excellus states:

Since our inception in 2010, Excellus Solutions has provided IT Solutions to all AFMC Bases, major commands, Multiple US Air Force operational organizations, and additional Department of Defense (DoD) government agencies. Excellus Solutions delivers excellent quality, performance, and success, with experience supporting the U.S. Air Force (contracts totaling more than $4.7B), our team members have the expertise to fulfill all NETCENTS-2 task orders with proven quality.

The website also states that Excellus contracts with numerous other U.S. agencies, and Departments within the U.S. Department of Defense.

44.    Excellus's website is virtually identical to Defendant MSI's website in that, *inter alia*, under "Contracts" a description of the NETCENTS-2 contract that is virtually identical in form and content to the MSI website link for "Contracts."  Also like the MSI website, the Excellus website "Contracts" link contains section entitled "Our NETCENTS-2 past performances" [sic] under which Excellus describes at length its work under the NETCENTS-2 contract.  See http://www.excellussolutions.com/pastPerformance.html.  United States Air Force website www.netcents.af.mil/Contracts/NETCENTS-2/AppSrvs/ states that Defendant Excellus holds the U.S. Air Force's small business set aside "NETCENTS-2" IDIQ contract no. FA8771-12-D-1006.  As noted, the MSI website describes MSI's purported work under the NETCENTS-2 contract at some length and invites readers to contact netcents2@excellussolutions.com for more information.

45.    Excellus reportedly is subject to NAICS code 541618.  The SBA's size standard and description for this code is as follows:

| 518210 | Data Processing, Hosting, and Related Services | $32.5 million |
|--------|------------------------------------------------|---------------|
| 541511 | Custom Computer Programming Services | $27.5 million |
| 541512 | Computer Systems Design Services | $27.5 million |
| 541513 | Computer Facilities Management Services | $27.5 million |
| 541519 | Other Computer Related Services | $27.5 million |
| 541611 | Administrative Management and General Management Consulting Services | $15 million |
| 541612 | Human Resources Consulting Services | $15 million |
| 541618 | Other Management Consulting Services | $15 million |

13 C.F.R. 121.201.

46.   OST.   Defendant OST's website states under "Small Business Preferences" that it is a small business.   It further states that OST holds federal contracts or works with numerous agencies, including the U.S. Federal Aviation Administration, U.S. Department of Homeland Security, U.S. General Services Administration (including GSA Federal Supply Schedule contracts), and U.S. Air Force (including the above-discussed NETCENTS-2 contract).   Defendant Ramanjit Singh's wife Mona Singh is believed to be or to have been an owner of OST.

47.   OST reportedly is subject to NAICS code 541512.   The SBA's size standard and description for this code is as follows:

| 541512 | Computer Systems Design Services | $27.5 million |
|--------|----------------------------------|---------------|

13 C.F.R. 121.201.

48.   <u>Freealliance</u>.      Defendant Freealliance is believed to be owned by Defendant Ramanjit Singh's wife, Defendant Mona Singh. Relator was told this by individual Defendants and by 22nd Century bankers.

49.   On its website, Freealliance states that it is "a SBA 8(a) Certified, HubZone and Economically Disadvantaged Women Owned Small Business providing IT Services and Solutions to Commercial and Government clients [with] presence in Washington DC, Virginia, and Idaho."

50.   Defendant Anil Sharma worked as President of Freealliance. He also is listed on LinkedIn as Freealliance's President and founder. Upon MSI's purchase of the Gaithersburg, Maryland 8(a) company, the 8(a) company's 8(a) contracts are going to be transferred to Freealliance.

51.   Defendant Freealliance is believed to be subject to NAICS codes 541511, 541512, 541513, 541519, 541611. The SBA's size standard and description for each of these codes is as follows:

| 541511 | Custom Computer Programming Services | $27.5 million |
|--------|--------------------------------------|---------------|
| 541512 | Computer Systems Design Services | $27.5 million |
| 541513 | Computer Facilities Management Services | $27.5 million |
| 541519 | Other Computer Related Services | $27.5 million |
| 541611 | Administrative Management and General Management Consulting Services | $15 million |

13 C.F.R. 121.201.

52.   Outline.   As noted above, Defendant Outline shares a street address with Defendant 22nd Century at 1 Executive Drive, Suite 280, Somerset, NJ 08873. Defendant Satvinder Singh is listed as Outline's President and Chief Executive Officer.

53.   Defendant Satvinder Singh is an owner, President and Facility Security Officer of 22nd Century; serves or has served as President of 22nd Century Staffing (which is owned by his wife); funded the formation of MSI by depositing money into the personal account of Joshi and is an owner of MSI; is a member of Excellus and listed in a September 23, 2013 Excellus Change of Address filing as the person "with the right and power to manage the company's [Excellus's] business affairs"; is an owner of OST; and serves or has served as President and Chief Executive Officer of Outline.   Defendant Satvinder Singh employs Ramanjit Singh, whose wife Mona Singh is believed to own Defendant Freealliance.

54.   Defendant Satvinder Singh controls and has the ability to control 22nd Century, 22nd Century Staffing, MSI, Excellus, OST, Outline and Freealliance.   Relator Halldorson routinely observed Satvinder Singh exercise such control.   For example, Satvinder Singh led the negotiation of the acquisition of Bizzell (now MSI).   Defendant Anil Sharma told Relator Halldorson that Satvinder Singh had eleven different companies.   Satvinder Singh decided Relator Halldorson's role at MSI.

55.   Typically every week, Defendant Satvinder Singh would travel from New Jersey to northern Virginia to preside at a meeting with Defendant Anil Sharma, Defendant Ramanjit Singh, occasionally Defendant Venkatesh Joshi, Ranju Dominick (Director of Proposals and Pricing for Defendants 22nd Century, MSI, Excellus and OST),

and in general all the program managers for Defendants 22nd Century, MSI and Excellus. At these meetings, proprietary information freely was shared between these various individuals and companies.

56.    Defendant Anil Sharma has been or is the Chief Operating Officer of Defendants 22nd Century and MSI. As noted above, Sharma also worked as President of Defendant Freealliance.   Defendant Sharma is Defendant Yoshi's brother-in-law. Defendant Satvinder Singh repeatedly made it clear to Relator that Defendant Sharma was in charge of 22nd Century, 22nd Century Staffing, Excellus and MSI, as well as the entire team of shared recruiters, human relations personnel, and accounting and IT personnel in India. Relator Halldorson routinely observed that Defendant Sharma act and speak in a manner that indicated that Sharma well understood that such was the scope of his role and authority and Sharma consistently acted accordingly.

57.    Defendant Ramanjit Singh works as a consultant for Defendant 22nd Century and is listed as its registered agent. Ramanjit Singh's wife Mona Singh owns Defendant Freealliance. On information and belief, Freealliance was started with funding from Defendant Satvinder Singh. Ramanjit Singh drives a Bentley automobile that he stated was a $220,000 vehicle.

58.    Defendant Mona Singh is believed to be the owner of Defendant Freealliance and an owner or past owner of Defendant OST. She has been heavily involved in the negotiations by Defendant MSI to purchase MSI Universal (Gaithersburg Maryland). As noted above, the individual Defendants intend that MSI continue certain

of MSI Universals contracts while Mona Singh and Freealliance (an 8(a)) company), would continue MSI Universal's 8(a) contracts.

59.    Defendant Joshi is owner, President, Facility Security Officer and registered agent for Defendant MSI.  Joshi works for Defendant 22nd Century, and also works as Facility Security Officer for Defendant Excellus.  Joshi does not actually work for MSI, but he does work for Excellus.  Defendant Joshi is believed to be married to Preeti Parthasarathy, who is listed as resident agent for SP Technologies, LLC, a California entity presently not named as a Defendant.   Mail addressed to SP Technologies, LLC frequently is received at the Excellus office on Jones Branch Road in Virginia.  SP Technologies, LLL reportedly also has an address at 1998 Barkham Lane, Vienna, Virginia 22182, which is a residential, single-family house.

60.    Defendant Joshi therefore is involved at the senior executive level of 22nd Century, MSI and Excellus.  He takes directions directly from Defendant Satvinder Singh and Defendant Sharma.  For example, Satvinder Singh negotiated the purchase of Bizzell, and then instructed Defendant Joshi to sign the purchase agreement as owner.

61.    Defendant Ravi C. Narayan ("Narayan") is an owner of OST and, indirectly through OST, of Excellus.  Narayan was employed by 22nd Century until he was assigned to OST in connection with creation of the joint venture company Excellus.  Narayan also is the owner and President of a Radiant Solutions, Inc., which presently is not a named Defendant.  His wife is believed to be Vasantha C. Narayan and the registered agent for Radiant Solutions, Inc.

62.     The Defendants coordinated bidding and pricing on Government contracts. They allocated bidding opportunities and pricing among Defendants, deciding among themselves which of the Defendant-businesses would submit a bid or proposal in response to specific Government solicitations.   Pricing for all proposals for all Defendants was prepared by Renju Dominick and Defendant Sharma.   Defendant 22nd Century typically churned out the proposals that the other Defendant companies submitted to Government agencies.   Sometimes, one Defendant company would use the past performance or staff qualifications of another Defendant company in its proposal.

63.     Certain of the Defendant companies share offices.   When Defendant MSI found the office space at 7926 Jones Branch Road, the leasing company would not accept MSI's signature because it was a new company.   Defendant Excellus (owned by Defendants 22nd Century and OST) signed the lease.   Excellus also leased much of the equipment for MSI's new office.   When MSI needed a copy machine, Excellus purchased it using Excellus's line of credit.

64.     On the door of one particular office at "Excellus's" suite at 7926 Jones Branch Road, the sign on the doors says "MSI Mission Services, Inc. & Excellus Solutions Suite 505."   Defendants MSI and 22nd Century also shared a computer network. For example, on Defendant Sharma's laptop, Sharma had five different Outlooks for the five different companies.

65.     The personnel working out of the office at Greensboro Drive are working for 22nd Century, 22nd Century Staffing, MSI and Excellus, and they all have two, three or more e-mails addresses.   The MSI computer network deliberately was set up to purge e-

mails every thirty days or so. The support personnel working in India have five or six e-mail addresses and use aliases to hide the fact that they are all the same people working for the same company.

66.     The business Defendants also share a common management structure and team. This includes shared Federal proposal preparation teams, shared information technology support, common benefit plans, a shared Human Relations department and shared human relations personnel, shared support staffing, shared legal counsel, shared security, collusively-determined pricing, shared graphics, and shared marketing and technical support. As noted, the Defendants go so far as give the same individuals different names to mask their identities.

67.     Defendants 22nd Century and MSI utilize the same company for employee retirement, investment and insurance plans. In discussing his 401k retirement benefits with the Principal Financial Group, Relator was informed that Defendant Satvinder R. Singh and an "R. Singh" (believed to refer to Defendant Satvinder R. Singh) are the points of contact for both the 22nd Century and the MSI retirement plans.

68.     The business Defendants share numerous employees (some of whom are treated as "consultants"). For example, Ms. Princy Thomas is head of Human Relations for MSI and receives full time pay from MSI. Yet she also serves as the head of Human Relations for Defendants 22nd Century, 22nd Century Staffing, and Excellus. Similarly Ms. McKenzie Harshaw is Deputy Program Manager for both 22nd Century and MSI. Ms. Meenakshi Thakur is employed by Defendants 22nd Century and Freealliance, and Outline Systems, Inc. Mr. Kyle Shoemaker consulted for multiple Defendant businesses.

69.     For years, the Defendants informally have been shifting Federal contract work between themselves, typically without notice to the Government or contract novation as required by the Federal Acquisition Regulation for a formal contractor assignment of a Federal contract.  For example, 22nd Century has shifted Federal contract work over to MSI, but continued to bill for that work as 22nd Century.  As alleged above, Excellus holds the U.S. Air Force contract, but Excellus and MSI take credit for work on that contract under the "past performance" sections of their respective websites.

70.     Sometimes the work-shifting is formal.  For example, in December of 2012, Defendant 22nd Century executed a novation of its contract with County of Orange, California, to Defendant 22nd Century Staffing.  Defendant Ramanjit Singh is listed as the point of contact for both 22nd Century and 22nd Century Staffing (with the same phone number and different e-mail addresses).   Defendant Satvinder Singh executed the assignment as President for both 22nd Century and 22nd Century Staffing.

71.     Defendant 22nd Century represents that it is International Organization for Standardization ("ISO") certified for ISO 9000, Quality Management; ISO 20000, Information Technology; and ISO 27000, Information Security Management.   22nd Century further represents that it is Capability Maturity Model Integration ("CMMI") Certified at Level 3.  Other Defendant-companies hold the same certifications.  All of the certifications were purchased from a company with addresses in India and Australia that is not listed as an accredited ISO certification entity.

72.     Under the above-quoted SBA regulations and factual allegations, all of the company-Defendants are affiliated in numerous respects.   Treated as affiliated, the

company-Defendants are ineligible for small, small and disadvantaged (8(a)) and small and woman-owned business preferences in Federal contracting and subcontracting.

## ADDITIONAL RETALIATION FACTS

73.     As discussed above, Relator Halldorson was employed by Defendant 22nd Century at Vice President of Strategic Initiatives beginning in September of 2015. On or about May 1, 2016, 22nd Century transferred Halldorson's employment to Defendant MSI. At that time, Halldorson continued to work with 22nd Century as a consultant.

74.     Relator Halldorson was told that his role would be to build and develop an Intelligence Community concentric program by winning new business and standing up the new programs. He further was told that he would have the full backing of 22nd Century's resources and staff, including the full support of senior managers for functions such as staffing, human resources, contracts, proposal, pricing, graphics, information technology, *etc*.

75.     It quickly became clear that Relator Halldorson could not do or assign anything of note until Defendant Sharma gave his approval. This undisclosed approval process significantly hampered progress Halldorson was hired to achieve. His requests for support would go unanswered for days, and work that was submitted to him often was substandard or non-compliant. When Halldorson confronted 22nd Century's functional leaders regarding their work product they often offered no excuse and nor would they agree to make the required changes.

76.     On several occasions during Halldorson's weekly meetings with Defendant Sharma, Halldorson brought up his concerns that 22nd Century may be in violation of

legal or ethical duties.  For example, Halldorson would be instructed to use questionable assets, past performance, proposal write ups, and suspect ISO and CMMI Level 3 certifications, in proposals and communications to the Government or teaming partners in order to induce them to contract with Defendants 22nd Century or MSI.

77.     Halldorson began challenging Defendants Satvinder Singh and Sharma regarding the 22nd Century and MSI staffing process, including specifically the staffing of positions that required a Secret or Top Secret clearance.  For example, Halldorson believed that 22nd Century and MSI were violating Defense Information Systems Agency rules and regulations by using offshore recruiters (apparently in India) who pretended that they were United States domestic recruiters and adopted western alias names in order to recruit personnel with security clearances without disclosing any of this to their candidates, customers or the Government.

78.     In response, Defendant Sharma told Halldorson typically – and more and more harshly each time -- that:  "We win work and have for over 10 years doing it this way and we are not going to change" (or similar words to that effect).   Relator Halldorson raises these problems by telephone, in face-to-face conversations and in e-mails with Defendant Satvinder Singh, only to be told:  "Anil is my COO and I trust him and he has my complete confidence."

79.     The longer Relator Halldorson worked at 22nd Century and MSI the more it became apparent they were only using him as front to hide their questionable conduct and to initiate deals with the Government and Government prime and subcontractors that often later they would not honor.

80.     When this became clear, Relator Halldorson believed that he had no choice but to resign.  As a result, on July 15, 2016, Halldorson resigned from 22nd Century and MSI.  His resignation stated:

> Please accept my resignation effective immediately based on what I believe to be irreconcilable business and ethics differences. I can no longer in good faith represent either 22nd Century Technologies Inc. or Mission Services Inc. based on their common relationship and management of both organizations. I do not believe we are factually representing our true intentions when entering into discussions with the US Government, teaming partners or even our own staff. It is my belief that on several occasions we have even crossed the line and broken State and Federal laws to include the False Claims Act.

### FIRST CLAIM:
### FALSE CLAIMS (FCA § 3729(A)(1))

81.     All of the preceding allegations are incorporated herein.

82.     Defendants 22nd Century, 22nd Century Staffing, MSI, and Freealliance have submitted numerous proposals for Federal subcontracts or prime contracts in which they represented themselves to be a small business for purposes of the procurement. Those proposals related to prime contracts or subcontracts reserved, set aside, or otherwise classified as intended for award to small business concerns.

83.     Such representations were false, because those Defendants (and possibly other not named as Defendants) were affiliated within the meaning of the SBA's regulations.

84.     The Defendants knowingly engaged in market allocation and price collusion in connection with Federal subcontract and prime contract opportunities and

obtained contracts based on such improper activities in violation of Federal law and regulations. *E.g.*, 15 U.S.C. § 1; 42 U.S.C. § 2102; FAR 3.104-3(b).

85.   The Defendants obtained fictive ISO and CMMI certifications, and represented that they possessed legitimate such certifications in their Federal subcontract and prime contract proposals.

86.   Defendants violated or undermined DISA or other U.S. security clearance regulations or rules in recruiting and performing Federal prime contracts and subcontracts.

87.   Further, these Defendants induced or obtained many such Federal prime contracts and subcontracts on the basis of such false representations, certifications, market allocation or price collusion, and security clearance violations.  The Defendants then performed such contracts and were paid for such performance with United States funds.

88.   The Defendants actively hid and withheld their affiliation from the Federal Government and Federal Prime contractors.

89.   The Defendants knowingly utilized fictive ISO and CMMI certifications to induce or influence contract awards.

90.   The individual Defendants activity participated in a scheme to hide the affiliations between the business Defendants, the market allocation and price-fixing, the fictive certifications and the improper recruiting practices and therefore participated in causing the submission of proposals and claims containing explicitly or implicitly false representations.

91.     The Defendants acted with actual knowledge of the falsity of their small business status representations, market allocation and price collusion, ISO and CMMI certifications, and security clearance position recruiting practices and representations. Alternatively, the Defendants acted with reckless disregard for the falsity of the small business status representations, market allocation and price collusion and certifications, or with deliberate indifference to the falsity of such representations and their market allocation and price collusion and fictive certifications.

92.     The Defendants knowingly presented for payment or approval, or caused to be presented for payment or approval, false or fraudulent proposals and false or fraudulent payment claims under the resulting contracts in violation of 31 U.S.C. § 3729(a)(1)(A), including their proposals in which they falsely represented their small business status, engaged in market allocation or price collusion, utilized false ISO or CMMI certifications, or employed improper and dishonest recruiting practices.

93.     The Defendants' false small business status representations, market allocation and price collusion, fictive ISO and CMMI certifications, and improper and dishonest recruiting practices caused actual damage to the United States.

**WHEREFORE**, for this claim, Relator Halldorson requests the following relief from each of the Defendants, jointly and severally:

A.     That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,500 and not more than $11,000 for each violation of 31 U.S.C. § 3729(a)(1)(A).

B.    That Relator be awarded the maximum amount allowed pursuant to §
3730(d) of the False Claims Act;

C.    That Relator be awarded all costs of this action, including attorneys' fees
and expenses;

D.    That Relator be awarded pre-judgment and post-judgment interest; and

E.    That Relator be awarded such further relief as the Court deems just.

**SECOND CLAIM:**
**FALSE RECORDS AND STATEMENTS ((FCA § 3729(A)(2))**

94.    All of the preceding allegations are incorporated herein.

95.    The Defendants knowingly made, used, or caused to be made or used, false
records or statements material to their false or fraudulent proposals and claims.  Such
false records or statements include but not limited to Defendants' false small business
representations in their proposals, their self-certifications in Federal systems such as the
System for Award Management ("SAM"), their statements in their websites, their fictive
ISO and CMMI certifications, and their multiple e-mail addresses and name aliases used
to accomplish their schemes.

**WHEREFORE**, for this claim, Relator Halldorson requests the following relief
from each of the Defendants, jointly and severally:

A.    That this Court enter judgment against Defendants in an amount equal to
three times the amount of damages the United States has sustained because of
Defendants' actions, plus a civil penalty of not less than $5,500 and not more than
$11,000 for each violation of 31 U.S.C. § 3729(a)(1)(B).

B.     That Relator be awarded the maximum amount allowed pursuant to §
3730(d) of the False Claims Act;

C.     That Relator be awarded all costs of this action, including attorneys' fees
and expenses;

D.     That Relator be awarded pre-judgment and post-judgment interest; and

E.     That Relator be awarded such further relief as the Court deems just.

## THIRD CLAIM:
## CONSPIRACY ((FCA § 3729(A)(3))

96.     All of the preceding allegations are incorporated herein.

97.     The Defendants conspired to commit a violation or violations of 31 U.S.C.
3729(a)(1) subparagraph (A) and (B).  Each of the Defendants performed one or more
acts in furtherance of such conspiracy.

**WHEREFORE**, for this claim, Relator Halldorson requests the following relief
from each of the Defendants, jointly and severally:

A.     That this Court enter judgment against Defendants in an amount equal to
three times the amount of damages the United States has sustained because of
Defendants' actions, plus a civil penalty of not less than $5,500 and not more than
$11,000 for each violation of 31 U.S.C. § 3729(a)(1)(C).

B.     That Relator be awarded the maximum amount allowed pursuant to §
3730(d) of the False Claims Act;

C.     That Relator be awarded all costs of this action, including attorneys' fees
and expenses;

D.      That Relator be awarded pre-judgment and post-judgment interest; and

E.      That Relator be awarded such further relief as the Court deems just.

## FOURTH CLAIM:
## RETALIATION ((FCA § 3730(H))

98.     All of the preceding allegations are incorporated herein.

99.     During his tenure with Defendants, the Defendants' schemes became increasingly apparent to Relator Halldorson and his initial concerns and suspicions germinated into outright concern. Halldorson's efforts to convince Defendants to cease and remedy their improper conduct repeatedly were rebuffed and rejected.

100.    For the reasons stated above, Relator Halldorson ultimately had no reasonable choice but to resign from Defendants 22nd Century and MSI. On July 15, 2016, after about ten months of increasingly arduous struggles, mounting concerns and management refusals to take any corrective action, he did so.

101.    Relator Halldorson was an employee or agent of Defendants 22nd Century and MSI. Halldorson constructively was discharged because of the Defendants' conduct described above, his lawful acts to stop the Defendants' actions and violations of the False Claims Act described above, and his activities in furtherance of this civil action under Sections 3729 and 3730 of the False Claims Act.

**WHEREFORE**, for this claim, Relator Halldorson requests a Judgment for the following relief from Defendants 22nd Century and MSI, jointly and severally:

A.      All relief necessary to make the Relator whole;

B.      Two times the amount of back pay and front pay;

C.      Interest on the back pay and front pay;

D.      Compensation for special damages sustained as a result of the retaliation, including but not limited to litigation costs, reasonable attorneys' fees and emotional distress damages;

E.      Pre-judgment and post-judgment interest; and

G.      Such further relief as the Court deems just.

## JURY REQUEST

Relator requests a jury for all issues that may be tried by a jury.

Date:  January 10, 2017

                    Respectfully submitted

                    LAW OFFICE OF VICTOR A. KUBLI P.C.

        By:     _____
                    Victor A. Kubli, Esq.
                    D.D.C. # MD012917
                    13948 Bromfield Road
                    Germantown, Maryland 20874
                    Ph: (301) 801-2330
                    E-mail: kubli@kublilaw.com

                    Counsel for Relator